Section 204 (b) refers specifically to a "taxable year." Section 200 defines the term "taxable year" to mean—

the calendar year, or the fiscal year ending during such calendar year, upon the basis of which the net income is computed under section 212 or section 232. The term "fiscal year" means an accounting period of twelve months ending on the last day of any month other than December.

Section 226, under which the taxpayer changed the basis of computing its net income from fiscal year to calendar year, speaks of the interim between the fiscal year and the calendar year as a "period," and provides that a separate return shall be made for this *period*, and further provides that the net income shall be computed on the basis of such *period*. In such a case as this, where the taxpayer has been in existence prior to the beginning of the taxable period, and the return does not purport to include income received during the twelve months preceding the close of the taxable period, the definition of a taxable year is so clear as to leave no room for construction. We must conclude that the taxpayer is not entitled to the benefits of section 204 (b).

We think it is also clear that the taxpayer may not change its accounting periods as suggested by counsel in order to permit it, in effect, to make a return for a six months' period from July 1, 1918, to December 31, 1918, and a further return for the calendar year 1919. Section 212 (b) of the law required that "the net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer." The returns were filed by the taxpayer upon this basis.

---

## Appeal of WALLE & COMPANY, LTD.        Docket No. 1175.

Submitted April 1, 1925; decided April 28, 1925.

*Herbert W. Waguespack, Esq.*, and *Henry J. Miller, C. P. A.*, for the taxpayer.

*A. Calder Mackay, Esq.*, for the Commissioner.

Before GRAUPNER, GREEN, and LANSDON.

Income and profits taxes for the years 1918, 1919, and 1920, in the amount of $7,233.42, are involved in this appeal. The controversy arises from the refusal of the Commissioner to permit the taxpayer to include in its invested capital the personal account of its president, which, it is alleged, represents amounts due by him to the taxpayer, and to deduct from its gross income certain amounts paid in the years 1919 and 1920, for repairs of a building, rented by it from month to month and used for business purposes. The facts were stipulated and certain papers were offered in evidence. From the stipulation, the documentary evidence, and the allegations of the petition admitted by the Commissioner, the Board makes the following

## FINDINGS OF FACT.

1. The taxpayer is a corporation incorporated in 1900, under the laws of Louisiana. Its principal office is at 401 Tchoupitoulas Street, New Orleans, La. Its authorized capitalization is $20,000, evidenced by 2,000 shares of stock of the par value of $10 per share. Its president, B. J. Walle, was the owner of 740 shares and his wife of 1,240 shares during the years involved in this appeal. The remaining 20 shares were owned by minority interests or were held by the taxpayer as unissued treasury stock.

2. From about the date of the incorporation of the taxpayer until 1914, a man of the name of Claverie was a stockholder and officer. During that period Claverie drew out of the business the amount of $16,914.34, which was charged to his personal account on the books, and, during all that time, was included in the accounts receivable of the taxpayer. Claverie never paid any interest on this amount or any part of the principal.

3. When Walle became president of the taxpayer in 1914, the amount of $16,914.34, theretofore charged to Claverie, was transferred to the personal account of Walle. From that time Walle withdrew large amounts from the business of the taxpayer, and such amounts were charged to his personal account, and treated as items of accounts receivable. At December 31, 1920, the amounts so withdrawn by Claverie and Walle totaled $149,273.82. Walle never made any payments of either interest or principal on his account.

4. In making its income-tax returns for the years 1918, 1919, and 1920, the taxpayer included the amounts withdrawn by its officers and carried on its books as accounts receivable in the computation of its invested capital. Upon auditing such returns, the Commissioner excluded the amounts withdrawn by Claverie and Walle from invested capital, and held that such withdrawals were payments in anticipation of dividends and, as a result of such exclusion and other minor adjustments, asserted additional tax liability of $7,235.42, and so notified the taxpayer in a deficiency letter mailed October 25, 1924.

5. The taxpayer conducts its business in a building owned by Mrs. B. J. Walle, the owner of a majority of its stock and the wife of its president, which it rents from month to month. During the years 1919 and 1920 it made certain improvements in such rented building at a cost of $513 and $3,000, respectively, and charged the amounts so paid out to its expense account. The Commissioner held that the conditions under which the taxpayer had the use of the building constituted a lease for a term of years equal to the useful life of the property, disallowed the cost of the improvements as ordinary and necessary expenses, and treated such cost as a capital investment, subject to depreciation at the usual rates for twenty years, estimated to be the remaining useful life of the property.

## DECISION.

The determination of the Commissioner is approved.

61359°—26——68